Springer W. Truman v. Commissioner.
Springer v. Commissioner
Docket No. 15825.
United States Tax Court
1949 Tax Ct. Memo LEXIS 265; 8 T.C.M. (CCH) 108; T.C.M. (RIA) 49027; February 11, 1949
*265 Commissioner's disallowance of unsupported deductions sustained. Charles D. Harmon, Esq., and Clayborne W. Smoot, C.P.A., Uhler-Phillips Bldg., Marion, O., for the petitioner. William R. Bagby, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion Deficiencies in income tax have been determined for the calendar years 1940 and 1941, in the respective amounts of $1,313.58 and $3,193.21. These deficiencies arose from the disallowance in each year of $10,000, which sums were a portion of the amounts claimed to have been paid by petitioner as winnings to various of his customers in connection with the operation of his "numbers business." Findings of Fact During the years 1940 and 1941 petitioner resided at Marion, Ohio, and filed his income tax returns for those years with the collector of internal revenue for the 11th district of Ohio. Since 1933 petitioner has been engaged in the bar and grill room business in Marion, and since 1932 he has been engaged in a number writing business in Marion. A number writing business is conducted upon a cash basis with receipts and disbursements made in U.S. currency and silver coins. The number *266 writing business involves wagering transactions where "customers" place bets with the operator of the business that a certain combination of numbers, based upon recorded stock or bond transactions on the New York Stock Exchange, will appear on the following day. If the correct number is picked, the person placing the wager receives winnings of 550 to 1. An employee of the number writing business known as a "writer" receives 30 per cent of each wager for securing the wager and a "pick-up man" receives 4 per cent of each wager for gathering up the wagers and bringing them to headquarters. Only 66 per cent of the wagers placed by "customers" are actually received by the number writing business from which all pay-outs or winnings must be paid and expenses of conducting the business must also be paid. Due to the fact that petitioner was engaged in an illegal business and had been arrested in 1937 for writing numbers, he destroyed all records pertaining to the number writing business for the years 1940 and 1941 and prior years. During the year 1940 petitioner received from the operation of his number writing business the sum of $55,163.84, which sum represented the gross amount of the *267 wagers placed with petitioner, less the commissions paid to writers in the amount of 30 per cent and commissions paid to pick-up men in the amount of 4 per cent. Petitioner claims that during 1940 his "pay-outs" to those picking the lucky number amounted to $49,036.23, of which latter sum the Commissioner disallowed $10,000 as being excessive and not substantiated by any records. Petitioner further deducted miscellaneous expenses incident to this particular business in the amount of $4,331.53. During the year 1941 petitioner received from the operation of his number writing business $111,266.72 after first paying to his writers commissions in the amount of 30 per cent and commissions to his pick-up men of 4 per cent. Petitioner claims that his pay-outs during the year 1941 were in the sum of $98,349.01. The Commissioner, in the determination of the deficiency, disallowed $10,000 of this latter sum as being excessive and not substantiated by any records. On his return for 1941 petitioner claimed miscellaneous expenses from the operation of the numbers business in the amount of $5,346.28 and the sum of $320 for "hedging operations." The "pay-outs" claimed as deductions for the years *268 1940 and 1941 were excessive in the amount of $10,000 in each year. Opinion ARUNDELL, Judge: The deficiencies for each of the years in question arose from the Commissioner's determination that excessive amounts were sought to be deducted or excluded from income in the way of "pay-uts" or "winnings" by petitioner's customers in his number writing operations. Such records as petitioner may have currently kept were destroyed to prevent them from falling in the hands of local authorities and in fear of criminal prosecution in connection with his gambling operations. The right of the Commissioner to bear heavily against a taxpayer who seeks deductions without any supporting data or records is now well established. . In the instant case it would appear that the Commissioner not only has not borne too heavily on the taxpayer but has been rather generous in allowing so much as he did allow in the complete absence of any supporting records. For instance, in the year 1941, out of the sum of $98,349.01 claimed to have been paid out to the winners of the lucky numbers, the Commissioner has allowed all but $10,000. The only evidence in support *269 of petitioner's claim for the full deduction is his unsupported word that he did in fact pay out the amount claimed. On the contrary, a former bookkeeper and employee of his testified that during the years 1940 and 1941 the amounts sought to be deducted were in fact padded. As bearing on the credibility of petitioner's testimony, we cannot overlook the fact that in 1941, from the operation of his Palm Supper Club, which was in part also a gambling operation which he carried on in partnership with another, petitioner had his income from this source reported by his bookkeeper as her income in order to lessen his own income tax. The bookkeeper, in fact, was not a partner, had no interest in the partnership, and received none of its income. The money to pay the tax reported by her was furnished by petitioner. Petitioner had no explanation for this transaction other than during that period he did not want it known that he had an interest in the partnership. Counsel for the petitioner, in his brief, suggests that the $10,000 disallowed in each of the years was not a business expense but rather an exclusion from income and argues that the deficiency determined was for the disallowance of *270 expenses which in fact were claimed in the return in an amount very much less than $10,000 in each of the years in question. We think this argument is completely beside the point and is without merit. It is entirely clear from the deficiency notice and it was entirely clear at the trial, both to the parties and to the Court, that the question involved was the disallowance of $10,000 in each year as excessive amounts claimed to have been paid to the winners of the lucky numbers. The burden of proof rested on the petitioner to show that the disallowance was improper. This burden he has completely failed to meet. Decision will be entered for the respondent.